UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
  PLAINTIFF,                         )  CASE NO. 3:15-CR-00358-SAE
                                     )           3:16-CR-00222-SAE
                                     )
        vs.                          )  JANUARY 6, 2017
YAHYA FAROOQ MOHAMMAD, ET AL.,       )
                                     )  3:00 P.M.
  DEFENDANTS.                        )
_____      )

        TRANSCRIPT OF ***TELEPHONE STATUS CONFERENCE*** PROCEEDINGS
              BEFORE HONORABLE EDMUND A. SARGUS, JR.
                 UNITED STATES DISTRICT JUDGE
                      COLUMBUS, OHIO
    APPEARANCES:
    FOR THE PLAINTIFF:
    CARTER M. STEWART
    United States Attorney
    By:  Matthew W. Shepherd
         Christos N. Georgalis
         David C. Smith
         Gregory R. Gonzalez
    Assistant United States Attorneys

    FOR THE DEFENDANT YAHYA FAROOQ MOHAMMAD:
    By:  Thomas A. Durkin, Esq.
         Robin V. Waters, Esq.

    FOR THE DEFENDANT IBRAHIM ZUBAIR MOHAMMAD:
    By:  David Lee Klucas, Esq.

    FOR THE DEFENDANT ASIF AHMED SALIM:
    By:  Linda G. Moreno, Esq.

    FOR THE DEFENDANT SULTANE ROOME SALIM:
    By:  Cherrefe A. Kadri, Esq.


        Proceedings recorded by mechanical stenography,
    transcript produced by computer.
    _____

                DARLA J. COULTER, RMR, CRR
              FEDERAL OFFICIAL COURT REPORTER
                   85 MARCONI BOULEVARD
                 COLUMBUS, OHIO  43215

2

FRIDAY AFTERNOON SESSION

JANUARY 6 , 2017

- - -

The following proceeding was held in chambers with all counsel present via telephone:

THE COURT:  Counsel, good afternoon.  This is Judge Sargus.  How are all of you?

(All counsel respond.)

THE COURT:  So we're convened by phone.  We are on the record.  If I could impose upon you when you speak, for the benefit of the court reporter, to let us know who you are.  I'm starting to recognize you by voice, but it's taking me a while.

There are a couple of matters we ought to start with, anyway, and they both have to do with the trial date that has been set.  We have the '16 case first and then the '15 case after that.  So let's talk, first, about the '15 -- I'm sorry, the '16 case.  I have them backwards, I think.

The '16 case was first, and the '15 case was second. There has been a motion to continue both dates.

Is there any objection to either of the motions?

MR. SHEPHERD:  Your Honor, this is Matt Shepherd for the government.  The government does not oppose the motion to continue.  Our request, however, is that we keep the '16 case going before the '15 case, but we don't oppose a continuance of both dates.

1        MS. MORENO:  Your Honor, this is Linda Moreno.  Happy

2   New Year to you and to every counsel on the call.

3        I wanted to indicate to the Court that because I had not

4   filed a motion to continue the '15 case, which is the case I'm

5   on with Mr. Asif Salim, that I wanted to make an oral

6   application to the Court.  And I can supplement it with a

7   written motion, but I do join both Mr. Durkin and Ms. Kadri's

8   motion to continue the trial matters for all the reasons stated

9   in both motions.  And I can certainly go into that further if

10   the Court feels it's necessary, but I am authorized to also

11   indicate that my client would waive any right to speedy trial

12   depending upon when the Court does set the future trial date.

13        THE COURT:  All right.  No, I don't think there's a

14   need to file a motion at this point.  Thank you for offering,

15   but I don't think that would be necessary.  So it sounds as

16   though everybody's on board.

17        MR. KLUCAS:  No.  I was just waiting my turn.  It's

18   David Klucas on behalf of Ibrahim Mohammad.  We did not ask, we

19   object, and so I just wanted to get our objection on for the

20   record.

21        THE COURT:  All right.  And you would like to

22   continue -- you're in the '15 case?

23        MR. KLUCAS:  I should have said.  I'm in the '15 case.

24        THE COURT:  Right.  And that would be the March trial

25   date.

4

1          MR. KLUCAS:  That's correct.

2          THE COURT:  So that's set for March 20.

3      Well, realistically, getting this done by the 20th with

4  the CIPA information probably is no longer practical.  I would

5  like to stay with that date, if we could.

6          Does anybody else want to weigh in?

7          Mr. Klucas, you believe it's reasonable to still get

8  this case going by then?

9          MR. KLUCAS:  I do.  I do.

10     Well, I suppose -- let me rephrase that.  It depends on

11 some of the decisions that are pending.  I guess my position is

12 I'm not -- I'm not asking -- I wouldn't ask for a continuance

13 now not knowing how some of the unresolved things are going to

14 be resolved.  And because Mr. Mohammad is locked up, I would

15 object.

16         THE COURT:  All right.  Anybody else want to be heard

17 on this?

18         MS. MORENO:  Yes, Your Honor.  This is Linda Moreno

19 again.

20         Judge, if you'll recall in our last chambers conference,

21 we did touch upon the amount of classified evidence that the

22 government has, and they indicated that they had a lot of

23 classified evidence.  However, here we are in January, and we

24 don't have an indication of how and if we're going to be able

25 to use that classified evidence; whether or not the Court,

1  after hearing counsel on this issue in early February, will go

2  back to the government and order them to provide either -- to

3  provide the classified evidence or to provide a non-classified

4  summary of the evidence.  We have co-counsel who are not yet

5  cleared, that's my understanding.  The government -- if the

6  Court does order them to prove -- to produce some of this --

7  some of these classified materials, Mr. Shepherd will tell you,

8  Judge, that he has to go back to his stakeholders, and that

9  takes time, in order to resolve how and in which manner that

10  classified evidence is going to be produced.  So I do think

11  that -- and I can only speak for Mr. Salim.  I will not be

12  ready to proceed to trial.  I need to go through that

13  classified evidence.

14      We also do have motions pending before Your Honor that

15  are going to affect how I proceed in Asif's defense.  And we

16  also have some interesting issues raised in Mr. Durkin's motion

17  to continue, especially I'm referencing the potential Rule 15

18  depositions that would -- I think would assist my client.

19      So I do believe that we are months away before I can

20  certainly declare and announce effectively that I'm ready for

21  trial, Judge.

22          THE COURT:  All right.  So I'm going to start --

23          MR. DURKIN:  Judge, this is Durkin on behalf of Farooq

24  Mohammad.  Obviously we filed the motion, and I'll stand on

25  ours.  I don't see any way that the case -- the '15 case could

1  be tried in March any more than the '16 case can be tried in

2  February for all the reasons set forth in the motion.

3          And I also want the record to reflect that I have

4  objected to the '16 case going forward first.  I've already

5  done that.  I didn't want my silence as acquiescence that

6  somehow I've changed my opinion.  But I don't think I should be

7  forced to try the '16 case ahead of the '15 case, and I'll just

8  stand on what I filed.

9          THE COURT:  Well, I'm looking at your filings.  What

10  do you see as the prejudice in making the '16 case go first?

11          You know, we -- one second, Mr. Durkin.  The way this

12  phone system works, if one of us is talking, the other one

13  can't hear the other one.

14          MR. DURKIN:  I apologize.  I'm in -- I'm in my car

15  because we were in court.  I had thought we were only going to

16  be 20 minutes, and we didn't get out of court until 5 minutes

17  before the call so I apologize.

18          THE COURT:  Well, that's why air traffic controllers

19  never include judges or lawyers, by the way.  But --

20          MR. DURKIN:  That would be a good idea.  A very good

21  idea.

22          THE COURT:  Right.  Can you give me in a nutshell,

23  though -- I want to be sensitive if there's an issue here I'm

24  missing, but what is the prejudice that you sense if we try the

25  '16 case first.

1          MR. DURKIN:  Well, hold on.  I'm sorry.

2          Well, there's -- the '15 case from our standpoint up

3    until the inclusion of this '16 evidence which I still don't

4    have a handle on, I thought, frankly, was a very defensible

5    case that had a lot of significant legal issues and intent

6    issues.  I think I may have stated a couple times that it's

7    really a 2339B case being shoehorned because of the lack of

8    designation of al-Awlaki into a 2339A case.  And I frankly

9    think that -- I really think my client has a defense on the

10   merits of that case.  And I don't know enough yet about the

11   2016 case other than, you know, essentially tape recordings

12   that we've been provided.

13          But as the government is aware, my client's wife has

14   repeatedly gotten letters from a jailhouse informant, for want

15   of a better term.  I don't think I'm supposed to use his name,

16   but I think the government knows who I'm talking about.  And

17   I've informed them of these letters, and these letters are

18   extremely suspicious, Judge.  They talk about -- he keeps

19   insisting -- he's trying to tell the -- my client's wife, who

20   is tangentially involved in the 2016 case, that's another issue

21   I'll get to, but in these letters he's essentially saying over

22   and over again -- and these go over the period of several

23   months -- that he wants her to make sure that she knows that he

24   is not cooperating with the government and that he wants me --

25   he doesn't use my name, but he wants to speak to her husband's

8

1    lawyer.

2           I was precluded from doing that because this informant,

3    while he's serving a sentence on a sex offense out of -- I

4    don't know how to pronounce the name of the county, Auglous

5    (phonetic) County or something?

6               MS. MORENO:  Auglaize.

7               MR. DURKIN:  Auglaize County.

8           He also has a pending case in the Northern District of

9    Ohio in front of a judge whose name is escaping me.  But he's

10   had a whole series of appointed lawyers, each of whom I've

11   tried to -- and each of whom I've spoken with in an attempt to

12   follow up on his request to talk to me, and the lawyers, you

13   know, quite respectfully say that they would not permit him to

14   talk to me.

15          I think I make reference in one of our more recent

16   pleadings to a recent conversation I had with his latest lawyer

17   whose name is also escaping me while I'm driving, but --

18              THE COURT:  So if we go back to -- the issue is

19   whether or not there would be anything I should be aware of

20   that would really be prejudicial if we tried the '16 case

21   first.

22          Now, I mean, I get these -- I get these impediments, but

23   they would still be present whether we try it first or second,

24   though, wouldn't they?

25              MR. DURKIN:  No, not necessarily.  Not if he's

1  acquitted of the 2015 case.  A lot of the tape recording, and

2  much of this is conversations coming from the informant's side

3  of the conversation, talks as if my client is a terrorist.  And

4  it would -- it would seem to me that an acquittal in that case

5  would change the whole composition of the government's ability

6  to put in evidence in the -- it's my understanding they want to

7  put in some evidence of the 2015 case in the 2016 case.

8         THE COURT:  Right.  And that's not been decided yet,

9  but this would be my point:  If I am accused or indicted on

10 something I'm later acquitted of but while the case is pending,

11 hypothetically, at least, I try to put a hit on a judge, the

12 fact I'm acquitted of the underlying case wouldn't change the

13 other case, would it?

14        MR. DURKIN:  It certainly might change our ability to

15 defend the 2016 case because the innuendo is that this is all

16 part of a terrorist attack, of his terrorist inclinations

17 which, I believe, preposterous and contrary to a lot of the

18 evidence.

19        THE COURT:  That would be if the 2015 information were

20 allowed in the 2016 case.  That's what you're assuming, right?

21        MR. DURKIN:  Well, yes.  But I don't know how that's

22 going to be kept out of the 2016 case because there's a lot of

23 talk on the tapes of things like terrorism money, can he get

24 money together.  Does his family have -- his family know he's a

25 terrorist?  His family has money.

1      THE COURT:  So, no, I get that.  So to be blunt, let

2  me just see if I can put this into a nutshell.  Your concern is

3  that the 2016 case is going to have some evidence under 404(b)

4  or otherwise that will bring in the allegations in the 2015

5  case, and your view is if the '15 case were tried first and

6  there were a favorable outcome to your client, that picture

7  would change.  Is that pretty much what -- in a nutshell --

8      MR. DURKIN:  Dramatically.  And I think that --

9      THE COURT:  So all right.  I get that.

10      Now, this is the flip side.  It sounds as though you and

11  the government on this particular issue are of the same mind.

12      The flip side, if we do the '15 case first, then the

13  other defendants are all going to say they definitely don't

14  want to be tried with your client.  Is that what I'm hearing

15  from the other defendants?

16      MS. MORENO:  Yes.

17      MR. KLUCAS:  Oh, yeah.

18      MS. KADRI:  We've all filed motions to that effect.

19      THE COURT:  There's going to be a complication either

20  way we do this.  Well, let me just do a headcount here.  Of the

21  people on the phone call, who would like to have the '15 case

22  tried first without addressing whether there's a severance?

23  Let's just hold that issue.  I assume the other defendants,

24  besides Mr. Farooq Mohammad, if he's severed, you don't care

25  what order they go in; would that be correct?

11

1          MR. KLUCAS:  On behalf of Ibrahim Mohammad, that would

2    be correct.

3          MS. KADRI:  This is Cherrefe.  On behalf of Sultane

4    Salim, I agree with that.

5          THE COURT:  If he isn't severed, you don't like that

6    situation, but does the order of trial make any difference?

7          MS. MORENO:  Judge, I'm not sure because I don't know

8    what the government's position is, frankly.  I take

9    responsibility for my own confusion here, but I understood that

10   they were going to bring in evidence of Mr. Mohammad in the '15

11   case if you granted their severance motion or not.  I mean, if

12   the government is saying they're not going to bring in any

13   evidence of Mr. Mohammad in the '15 case, I might agree with

14   co-counsel.  But I'm not sure what they want to do and what

15   they can do under whatever decision Your Honor finally does

16   make on that issue.  I think it's murky, Judge.  That's the

17   problem.

18         THE COURT:  Let me get with the government for just a

19   second.  So the government's already said you want the '15 case

20   tried first, right?

21         MR. SHEPHERD:  No.  We said we want the '16 case tried

22   first.  We prefer to have the '16 case go first because, to

23   hopefully clarify for Ms. Moreno, we have provided notice to

24   defense counsel in this case that in the '15 case we would

25   intend to introduce as 404(b) evidence against Mr. Durkin's

12

1    client, evidence that is related to the '16 case, the murder

2    for hire plot, that we would introduce that as 404(b) against

3    Mr. Farooq Mohammad.

4         THE COURT:  That would be a reason to do the order you

5    seek.  But then in the '16 case there's going to be a certain

6    amount of evidence about the '15 case you're going to have to

7    use, first of all, just to explain the sequence of events.

8         MR. SHEPHERD:  Correct, Your Honor.

9         THE COURT:  How in depth -- the argument was just made

10   that you would portray him as a terrorist.  You would have to

11   portray him as being in custody on charges pending in front of

12   the judge who's described in the indictment, right?

13        MR. SHEPHERD:  That's correct, Your Honor.  Our

14   intention in that case would be to introduce the evidence of

15   what he was charged for and who the judge was because we think

16   that's relevant to his further actions in trying to hire

17   someone to kill the judge.  We would not intend to get into the

18   details of the '15 case at the '16 trial; however, I'm sure

19   that some of the communications, there's some intertwined

20   nature that I think Mr. Durkin was referring to so I don't know

21   how cleanly 100 percent clean that would be, but our intention

22   would be to limit the underlying facts of the '15 case at the

23   '16 case.

24        THE COURT:  But you -- I mean, to be very precise, you

25   would want to introduce that there was a pending indictment,

13

1   charges were pending when this happened.  Would you want to

2   introduce the nature of the charges?

3          MR. SHEPHERD:  We would want to introduce what he was

4   charged for because I think that goes to his motive.

5          For example, someone who is charged for a lesser offense

6   might have less reason to want to murder the judge than someone

7   charged with a more serious offense so I think we at least

8   intend to say what he was charged with.

9          THE COURT:  All right.  But then, you know, that -- if

10  you're on the defense side, the jurors are being told he's been

11  charged with being a terrorist.  The government would want to

12  limit that, but I would think the defense would want to have

13  some way to try to explain that away.  So it sounds to me that

14  that issue would become more expansive than we would like it to

15  be, and that seems to be a bit -- more than a bit of a problem.

16  That seems to be a problem.

17         From the government's view, if we try the '15 case

18  first, just given the CIPA and so on, that's probably going to

19  cause some delay.  We'll talk about that in just a moment.  But

20  what's the prejudice to the government if we do the '15 case

21  first?

22         MR. SHEPHERD:  I think the primary delay, I would say,

23  Your Honor, is I think it would be a more significant delay.

24  And I think we need to remember that's the case where we have a

25  victim, and the government certainly has an interest in trying

1    not to unduly delay the trial where there's a real live victim.

2    So I think that's the first thing I would mention because my

3    concern is the '16 case, the issues, I believe, are less

4    complex than in the '15 case.  And I think if we have to wait

5    for the conclusion of the '15 case, the '16 case could be put

6    off for a significant period of time.

7         THE COURT:  I mean, I think that's absolutely true.

8    You know, the victim -- the purported victim has the same job I

9    have so obviously I understand the circumstance, but the

10   accused is in custody.

11        MR. SHEPHERD:  That's correct, Your Honor.  He is in

12   custody.  I also -- I guess in terms of a -- the way things

13   could resolve, I think if the '16 case is tried first and there

14   were an acquittal in the '16 case, that may make the issues of

15   what 404(b) evidence we would put in different.

16        For example, if there were an acquittal in that case,

17   we -- I mean, I guess I haven't thought this through entirely,

18   but I think it would affect what we would attempt to put in as

19   404(b) in the '15 case and may resolve some of the issues

20   related to severance and 404(b) evidentiary issues if '16 goes

21   first.

22        THE COURT:  Well, you know, I don't know if you can do

23   this quickly, but to the extent you could propose in a binding

24   way what you wouldn't use in the '16 case, I would at least

25   consider that.  I don't want to order a lot of extra briefing

15

1    in this case, but I want each side to have an opportunity.

2         By the way, the 404(b) issue, I don't want to sound like

3    a lawyer here but I am one, you know, the threshold burden of

4    proof for a proponent of 404(b) evidence is not proof beyond a

5    reasonable doubt, of course; it's actually, under the

6    Huddleston case, it's a very low threshold.  It's really just

7    whether a reasonable juror could use the evidence to make a

8    conclusion referenced in 404(b).  If you're going to give that

9    up, that would be a factor in whether I would do the '16 case

10   first or the '15 case.  Likewise, if you're going to represent

11   in a binding way a limitation on what you would offer in the

12   '16 case, that might also have some impact on which one goes

13   first.

14        So I'm a little troubled.  I don't want to make this any

15   longer than necessary but, I mean, we just know from the CIPA,

16   the '15 case is going to take longer.  I'm still inclined to

17   stay with the '16 case going first, but I will give you one

18   last shot at it.

19        This is what we're going to do.  We're going to go

20   forward today on the assumption the '16 case is going to go

21   first.  This is subject to re-review, though.  And here's how

22   we're going to do it.

23        Mr. Shepherd, do you think you can within a week make

24   representations to the parties and to the Court what you would

25   be willing to limit yourself to in the '16 case on the

16

1    assumption it's going first?  And then Mr. Durkin will have

2    another 7 days to respond to that as to why that's not

3    sufficient if he believes that to be the case.

4           MR. SHEPHERD:  And, Your Honor, just so I'm clear,

5    what -- so you would like a representation of what specific

6    evidence from the '15 case we would intend to present in the

7    '16 case?

8           THE COURT:  To be perfectly blunt, the more you can

9    limit that, the more likely I am to buy your position.  The

10   broader it becomes, then it seems to me it makes more sense to

11   try the '15 case first.

12          MR. SHEPHERD:  Yes, Your Honor.

13          THE COURT:  And, Mr. Durkin, you get the analysis

14   here.  You're going to argue the other way if you think it's

15   appropriate.

16          MR. DURKIN:  I understand.

17        There's a couple of other issues though, Judge, that you

18   should consider.

19          THE COURT:  All right.  Go ahead.

20          MR. DURKIN:  One, Mr. Shepherd made reference to it, I

21   made reference to it.  There is a lot of interrelated -- what

22   he called interrelated, I think that's accurate, evidence that

23   I don't think they're going to be able to separate out in the

24   '16 case.  There is an awful lot of talk, most of it coming

25   from the foreman, that assumes he's a terrorist and has

1   terrorist funding and so forth and can raise money.  There's

2   talk, for example, of how they could put a hit on Condoleezza

3   Rice, and I don't know, someone else who I forget now, Alberto

4   Gonzales, which I think demonstrates how preposterous much of

5   this plot may be.

6          But, in any event, there's -- there's just evidence that

7   I don't see how the government could stay away from that I

8   would just think is inherent in the context of the

9   conversation.

10          There's also two other issues that I've mentioned in my

11   pleadings.  One, is that my client's wife is an absolutely

12   critical defense witness to the 2016 case.  She does meet with

13   the informant -- not the informant, but an undercover agent and

14   brings him money, and there is a -- there will be a huge

15   evidentiary issue over what both of them thought the money was

16   for and the communications between my client and his wife.

17          The problem that we're still encountering, and I would

18   hope would be resolved by the time the '15 case were tried if

19   it went first, is whether or not she's going to be charged.

20   It's still my understanding that the government is still

21   conducting a grand jury investigation with respect to my

22   client's wife, which puts me in an impossible situation at the

23   moment of being able to call her at this time in the 2016 case,

24   which is another reason why my client in custody can -- is more

25   than happy to wait because we need the resolution of that case.

18

1          THE COURT:  Well, let me ask the government, is there

2     any date by which you can tell Mr. Durkin the status of

3     Mr. Farooq Mohammad's wife as a possible target or when she

4     would be cleared, one or the other?

5          MR. SHEPHERD:  Yes, Your Honor.  The further

6     investigation that is ongoing will be concluded at the end of

7     this month, and we will be able to have a decision, be able to

8     communicate a decision to Mr. Durkin, I would think, by the

9     middle of next month, by the middle of February, after we

10    evaluate the final investigative steps.

11         THE COURT:  All right.  Well, that helps a little bit.

12         MR. DURKIN:  That does.  That does.

13         The other related issue, Judge, on timing is that I had

14    a sense from talking to the -- I almost slipped and said his

15    name, but the informant's lawyer whose name is Steve Hartman,

16    in the conversation I had with him -- I think I filed as an

17    exhibit to our motion to continue my letter to him of

18    November 23, and he responded in a letter to me of November 29.

19    He said that whether or when that will change, he's not -- he's

20    not sure, but he apologizes if this gets in the way of my trial

21    preparations.

22         I can certainly represent that I had the impression from

23    our conversation that his position might change on that.  I

24    don't know.  I mean, he didn't disclose to me why it is that he

25    wouldn't let his client talk to me at the moment, but I can

1    represent -- and I don't think he'd mind me saying that I

2    certainly had the impression that he -- that that might not be

3    a permanent -- that there was some reason, there was a temporal

4    reason that something was going on that would -- that could

5    change.

6         So that would be another reason I'd advance to wait

7    because the government seems to be suggesting that they think

8    they can try their '16 case without Workman, and I guess

9    there's some case law to that effect.  But, boy, that -- you

10   know, my inability to not have Nabeela Talat, my client's wife,

11   or this -- or the informant, you know, I don't know how I can

12   defend the case without -- you know, it would be -- it would

13   just be *Mr. Toad's Wild Ride* because we would be -- we would be

14   defenseless in many ways.

15            THE COURT:  Well, you're welcome to put that into your

16   memorandum in opposition once the government files the first

17   brief.  But let's assume for now, and it will be subject to

18   revision when you file all this, that the '16 case is going

19   first and the '15 case is going second.

20        Let's then talk about trial dates that we can firm up

21   actually.

22            MR. DURKIN:  Well, can I throw another wrench into

23   things?

24            THE COURT:  What if I say no?  Go ahead.

25            MR. DURKIN:  You can but, you know, it will -- I'd

20

1    just have to file something.

2              THE COURT:  Go ahead.

3              MR. DURKIN:  We have a copy of your opinion on the

4    SAMs issue.  I met with my client's -- well, I had somewhat of

5    a family meeting the other day on the issue of going forward in

6    light of your ruling.

7         Can I ask the government what their position would be

8    with respect to my ability to communicate with my client if I

9    refuse to sign the attorney affirmation?

10             MR. SHEPHERD:  I guess in what sense?  In order to

11   meet with your client, I think it's been pretty clear our

12   position has been all along that the affirmations are required,

13   and I think we've been -- the terms of the order would require

14   you to sign the affirmations before calling him as well and

15   speaking on the phone.  I think we -- the marshal's service has

16   been accommodating while this litigation was pending on that

17   issue.  Is your question whether you can meet with him in

18   person, whether you can continue to communicate with him on an

19   ongoing basis without signing the affirmation, or a one-time?

20   I mean, I'm just not sure what you're asking.

21             MR. DURKIN:  Well, what I'm -- I've not made a final

22   decision and I want to seek my own counsel on this, but if I

23   had to make a decision today -- and I mean this respectfully,

24   Judge -- I would not sign the affirmation.  You know, this --

25   and part of my basis would be this is not a case that I came

1  into where the SAMs were already there and I knew what my

2  responsibilities would have to be.  And I don't want to

3  re-litigate it now.  That's not what I'm trying to suggest.

4  But suffice it to say that -- and I hope you'll take this as --

5  my saying this in good faith.  I don't believe that in good

6  conscience I can sign that.  I think I'm correct.  I don't

7  think the attorney general should be permitted to --

8           THE COURT:  Well, you know, listen, I'm happy to help

9  untie knots here, but you're also talking about an order I've

10  issued.  This is not a time to reargue it so you do what you

11  have to do --

12           MR. DURKIN:  No, I --

13           THE COURT:  No.  Let me finish.  You do what you have

14  to do, and I will do what I have to do.  But I want to move

15  this conversation forward, okay?

16           MR. DURKIN:  That's fine.  I'm not trying to reargue

17  it.  I'm simply -- you're asking about timing, and I'm only --

18           THE COURT:  We're not going to adjust the timing for

19  someone to refuse to obey one of my orders.  That's not one of

20  the things we're going to build into the timeline here.

21           Let's go back.  I want to talk about dates again.  The

22  '16 case, what would the government propose as a trial date?

23           MR. SHEPHERD:  So, Your Honor, for the '16 case, my

24  first -- my first proposal -- again, this is Mr. Shepherd.  My

25  first proposal for the '16 case, if it's sufficient time, would

22

1  be to move the '16 case from the February 7 date to the

2  March 20 date that's already free -- should already be free on

3  the Court's calendar.  That's my first proposal.

4        THE COURT:  Let me stop you there for a moment.  So,

5  Mr. Durkin, subject to all the other things we've talked about,

6  and noting your objection to this going first right now, how

7  does the March 20 date look to you?

8        MR. DURKIN:  Well, it's obviously available because

9  I've held it for the other case.  But --

10        THE COURT:  Is there something I need to know about as

11  far as discovery other than what we've already talked about?

12        MR. DURKIN:  I mean, other than how I can try the case

13  without those two people being at least made available, I --

14  you know --

15        THE COURT:  Well, let me ask you --

16        MR. DURKIN:  I can -- I mean, I can't say that I'm

17  tied up because I'm available.

18        THE COURT:  All right.  So the issues you've raised

19  about the witness availability, Mr. Shepherd you're going to

20  file the first brief, what I've just ordered.  You may want to

21  pick that up, too.  And then, Mr. Durkin, you're going to pick

22  it up in your memorandum in opposition.  Okay?

23        MR. DURKIN:  That's fine.  That's fine.

24        THE COURT:  So for now we're going to tentatively say

25  March 20 and, of course, I'll review your filings and see if

23

1  that changes anything.  On the assumption that the '16 case

2  goes first, let's then look at a date for the '15 case which

3  had been set for March 20.  What would the government propose

4  on that case?

5          MR. SHEPHERD:  Your Honor, my proposal would be to

6  schedule that case for early May.

7          THE COURT:  All right.  Let me just tell you, that's

8  not going to work.  I assume this is going to take several

9  weeks, right?

10          MR. SHEPHERD:  I would think approximately three

11  weeks, Your Honor, is our estimate.

12          THE COURT:  Just one moment.  I have a trial scheduled

13  in there that's going to conflict.  Just a second.  Give me

14  just one moment, counsel.

15          MR. SHEPHERD:  And, Your Honor, I want to make clear

16  these are dates I'm throwing out I have not discussed with any

17  defense counsel so I have no idea whether this is something the

18  parties agree on or not.  This is solely from the government.

19          THE COURT:  We're going to go in sequence.  I want to

20  get your request, I want to hear from the defendants and see

21  what they would propose and if these dates are available.  So

22  hang on just one moment and we'll do all that.

23          The month of May is not going to be particularly good

24  for me.  June would be better.  I'm looking at maybe the 12th

25  of June?

1          MS. MORENO:  Your Honor, this is Linda Moreno on

2    behalf of Asif Salim.  I would say that June 12 is a good date

3    for me.  I am also committed the month of May and the later

4    part of April.  June would be my first available date if the

5    trial is going to go for three weeks.

6          THE COURT:  All right.  Let me just double check this

7    date.  So we're looking at June 12.  Does anybody have any

8    heartburn with that date?  And, of course, I owe you a decision

9    on the issue of severance.  We're at least talking about

10   several of the defendants, not necessarily Farooq Mohammad.

11         All right.  So hearing no objection, then we'll set

12   June 12 --

13         MS. KADRI:  Judge, this is Cherrefe.  I wasn't sure if

14   you were going to call on us individually.  This is Cherrefe

15   Kadri.  I don't have a conflict on June 12.  That date is fine.

16   I just have a problem with the -- the security clearance.  I

17   have not gotten -- still haven't gotten anything from that so

18   I'm not sure how long -- how much longer that's going to take.

19         THE COURT:  How far along are you?

20         MR. KLUCAS:  This is David Klucas on behalf of

21   Mr. Ibrahim Mohammad.  I have not received any clearance.  I

22   haven't heard anything from anybody since my interviews.

23         THE COURT:  But you've done the -- wait a minute.  The

24   12th actually is not going to work.  I can do it in late April

25   or I can do it the latter part of June.

25

1          MS. MORENO:  Your Honor, I'm committed from late April

2    out of the country on matters so I would request late June.

3          THE COURT:  How does June 26 look?

4          MR. KLUCAS:  You know, on behalf of Ibrahim Mohammad,

5    I was the one that was objecting to the continuance so I'm not

6    going to give the Court a hard time about the date.  Whatever

7    date the Court selects we'll make work.

8          THE COURT:  All right.  Anybody else have a problem

9    with the 26th of June?

10         MS. KADRI:  I don't have a problem with the 26th, but

11   I'm just --

12         THE COURT:  Right.  You may not -- you can't prepare

13   until this is done.  But you filled out the forms, you've had

14   the interviews.  You just haven't gotten the response back

15   about clearance.  Is that where you are?

16         MS. KADRI:  Judge, what happened was -- that's

17   correct.  I did contact the CISO that did the interview, the

18   investigator, and he said he's finished with it.  So I

19   contacted Barbara Russell in DC, we e-mail, and her last

20   response was, you know, the investigation is done.  We're just

21   waiting for a determination.  We'll let you know.  I got the

22   feeling, you know, don't call us, we'll call you kind of thing.

23   But that was a month-and-a-half ago maybe.  And, you know, we

24   followed up right away.  The investigator was very good about

25   getting things done quickly, but I haven't heard anything.

1          MR. DURKIN:  For what it's worth, Judge, this is

2    Durkin.  Ms. Waters, I think, applied around the same time, and

3    we were just told the other day that it's been approved.  And I

4    would suggest that the squeaky wheel might get some oil if you

5    were to call there.

6          MS. KADRI:  Call them again?

7          MR. DURKIN:  No.  I'm suggesting that if the Judge

8    called or sent a letter.  I don't -- I'm pretty confident -- I

9    can't say for sure, but I -- I've worked with these people a

10   lot, as has Ms. Moreno, and I am the one that sent an e-mail

11   asking about Robin's clearance, and they got back to me right

12   away and it got taken care of.  So I have a suspicion that if

13   somebody from -- you know, like if John or someone called and

14   said, you know, we understand it's complete, can this be

15   expedited, it might help.

16         THE COURT:  All right.  Well, why don't we do this:

17         Counsel, why don't you call the last person you've had

18   contact with and indicate to them that it's causing a concern

19   on my end and that you just wanted to get an estimate of when

20   you could expect a decision.  And if you get a favorable

21   decision, that's fine.  If you don't, let Mr. Olivito in my

22   office know, and then I'll take it from there.

23         MS. KADRI:  Okay.

24         MR. KLUCAS:  Will do.

25         MS. MORENO:  Your Honor, I'm going to have an

27

1    additional request.  I read yesterday that Mr. Trump has a

2    skiff built in the Trump Tower, and perhaps we might want to

3    use that skiff in Trump Tower for our classified evidence.

4              THE COURT:  Sure.  Maybe we could all meet there.  We

5    may end up with one in our building, but the trouble is if you

6    are familiar with our landlord, GSA, they -- they are very rule

7    bound.  It would be in my second term by the time it would be

8    done.  So we'll get one, but it won't be any time soon.

9              All right.  So scheduling, we now have the two trial

10   dates, at least a tentative one on the first one.  With

11   regard -- but I do want to emphasize on the '15 trial, we need

12   to lock those dates in and assume that those are serious dates.

13   I've obviously left the 2016 case subject to further briefing

14   so that may not be as hard, but let's make sure that the 26th

15   date of June is a hard date.  And the date of the '16 case is

16   all right, it's just subject to revision.

17             All right.  While we're all on the call.  Is there

18   anything else we haven't talked about?

19             MR. SHEPHERD:  Your Honor, this is Mr. Shepherd.  In

20   addition to the trial dates we've just set, will the Court be

21   putting out a trial order for when jury instructions and voir

22   dire and all those motions in limine are due?

23             THE COURT:  Yes.  You know, what I suggest we do in

24   this case, after I make the decision on your motion, we start

25   getting on the phone probably every three weeks, and we can be

1  making sure knots are untied that are out there needlessly

2  hanging.  And that will be one of the topics we'll address, is

3  we have cutoff dates for motions.  That's already in place.

4       But in terms of proposed jury instructions, voir dire,

5  you need to understand how I do voir dire, what my expectations

6  would be and what your expectations of me should be, all those

7  sorts of things we'll do in the course of the weeks to come.

8       MR. SHEPHERD:  And, Your Honor, I was just going to

9  suggest also can the Court set new plea deadlines as well?

10      THE COURT:  I don't typically do that, but I'm always

11  willing to try something new.  What did you have in mind?

12      MR. SHEPHERD:  Well, you know, if the Court doesn't

13  have a requirement of a plea deadline, then we're fine with

14  that.  I guess I thought the Court did require a plea deadline.

15      THE COURT:  Well, I mean, if I could realistically

16  impose one, I would.  But, you know, if the week before the

17  trial somebody wants to plead, I've never made somebody go to

18  trial who wanted to plead.  But I assume you're all familiar

19  with that, right?

20      MR. SHEPHERD:  Yes, Your Honor.

21      THE COURT:  All right.  Anything else we need to talk

22  about?

23      MS. MORENO:  Your Honor, this is Linda Moreno.  I just

24  had a question.  Does the Court -- will the Court allow a jury

25  questionnaire?  I'm speaking only on the 2015 case.  Does the

1  Court want briefing in that to -- what's to be our expectation

2  in that regard?

3         THE COURT:  You know, I'm in an MDL series of trials

4  where we're using jury questionnaires.  The primary reason I've

5  used them in the past is when we have a long trial because a

6  lot of people can't sit for five weeks.  The other would be a

7  high profile case.  I guess I would be interested in your views

8  if there's been enough pretrial publicity that we can expect a

9  lot of people walking in the courtroom to be either close to

10  being automatically disqualified or something akin to that.  If

11  that's the case I would rather do questionnaires, and we would

12  use those to winnow down people coming in that we would not

13  assume would be close to being disqualified before they walked

14  into the courthouse.

15         MS. MORENO:  I would agree with that, Your Honor.  In

16  addition to the pretrial publicity, which I certainly expect in

17  these cases and they'll bleed into each other, unfortunately

18  for Mr. Salim, I also expect that juror questionnaires are

19  often used in these national security types of related cases to

20  focus on issues of prejudice resulting from, you know, the

21  religion, the culture, et cetera.  And, as I'm sure you know,

22  many district judges around the United States use them in these

23  cases.  And, as I said, I can certainly provide briefing if the

24  Court needs that, but it's our expectation there will be pretty

25  easy cause issues raised in the questionnaires from the

1   pretrial publicity and just personal issues of prejudice and et

2   cetera.

3        THE COURT:  Well, is there anybody on the call who

4   would be opposed to jury questionnaires?  I wouldn't think

5   there would be, but just in case.

6        MR. SHEPHERD:  Not the government, Your Honor.  We're

7   fine.  We would join in that.

8        THE COURT:  Why don't we do this:  We can do this

9   relatively early.  Why don't we set a date in a few weeks where

10  you all submit to me proposed questions to be on the jury

11  questionnaires, and then we can set this even for -- it would

12  be better if we had an in-person situation, but you're all

13  spread out.  But we can discuss -- I will tell you one thing

14  I've noticed with lawyers and questionnaires is I don't want to

15  ask 40 questions.  And the reason for that is simple.  It's

16  going to pique a lot of interest, it may encourage people to go

17  and do some research.  We don't want to do that.  Plus, it

18  won't be helpful.  This is not in lieu of voir dire.  What I'm

19  really look for are people whose time is being wasted and your

20  time will be wasted if you put them in the pool and we should

21  have checked ahead of time and we would have found out that

22  they would be automatically disqualified.  That's the group

23  we're looking for; people who can't serve that long, people who

24  know about the case, people who have really strong views about

25  matters that might come up in this case.  So I would keep it

1  relatively simple if you want to be successful with this.

2  Effective --

3       MS. MORENO:  I appreciate the Court's direction.

4       THE COURT:  -- but simple.

5       MR. DURKIN:  Judge, in our motion to continue we had

6  asked to extend the time for the filing of pretrial motions in

7  the '16 case.  The government had no objection to that.  Can we

8  get a date by which to file?

9       THE COURT:  What are you suggesting?

10       MR. DURKIN:  Maybe 30 days?

11       THE COURT:  All right.  Does the government have any

12  problem with that?

13       MR. SHEPHERD:  No, Your Honor.

14       THE COURT:  All right.  Then that's what it will be.

15       MR. DURKIN:  And I have one other issue, Judge, and I

16  don't want to -- I don't want you to think I'm trying to

17  re-litigate the order.  But so that I can advise my client and

18  his family, if -- are you ordering me to sign the affirmations?

19  Or if I don't sign them, would you not permit me to proceed in

20  the case?  In other words --

21       THE COURT:  I'm not going to answer a hypothetical.

22  I'm not going to make an off-the-cuff decision.  The order says

23  what it says.  You can notify me of what your choice is and

24  that could beget a briefing or something, but I'm not going to

25  do this in the abstract.  And, I mean, you know, if you need to

32

1   move quickly on this, I understand.  I would encourage that.

2   But I think I owe you an opinion, not something off the cuff.

3           MR. DURKIN:  No, no, no.  And I'm not trying to force

4   that.  It's just -- okay.  I'll do what I -- I will get

5   something to you right away.

6           THE COURT:  All right.  Very good.  Anything else?

7           MR. DURKIN:  Nope.

8           MR. SHEPHERD:  Your Honor, just so I'm clear on the

9   '16 case, the defense motions are due in 30 days, and then the

10  government has how many days to respond?

11          THE COURT:  What do you think, 15?

12          MR. SHEPHERD:  That's fine, Your Honor.

13          THE COURT:  We're supposed to divide by seven these

14  days.  How does that sound?

15          MR. SHEPHERD:  That works.

16          MR. DURKIN:  What date would that be, Judge?  30 days

17  from today is?

18          THE COURT:  Well, today is the 6th so that would be

19  the 5th of February, and the 19th would be the memorandum in

20  opposition.

21          MR. DURKIN:  Could -- that's a Sunday, Judge.  Could

22  we have until the 6th?

23          THE COURT:  Yes.

24          MR. DURKIN:  Thank you.  February 6.

25          THE COURT:  Right.

33

1          MR. DURKIN:  Okay.  Sounds good.  Thank you.

2          THE COURT:  All right.  Thank you very much.  Take

3    care.

4       (Proceedings concluded at 4:00 p.m..)

5                        - - -

34

1                         C E R T I F I C A T E

2

3              I, Darla J. Coulter, do hereby certify that the

4       foregoing is a true and correct transcript of the proceedings

5       before the Honorable Edmund A. Sargus, Chief Judge, in the

6       United States District Court, Southern District of Ohio,

7       Eastern Division, on the date indicated, reported by me in

8       shorthand and transcribed by me or under my supervision.

9

10                              s/Darla J. Coulter
                                Darla J. Coulter, RMR, CRR
11                              Official Federal Court Reporter

12

13

14                              January 18, 2017

15

16

17

18

19

20

21

22

23

24

25