# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

YAHYA FAROOQ MOHAMMAD,

  Defendant.

Case No. 3:15-cr-358(1)
CHIEF JUDGE EDMUND A. SARGUS, JR.,
Southern District of Ohio

---

UNITED STATES OF AMERICA,

  Plaintiff,

v.

YAHYA FAROOQ MOHAMMAD,

  Defendant.

Case No. 3:16-cr-222
CHIEF JUDGE EDMUND A. SARGUS, JR.,
Southern District of Ohio

## OPINION AND ORDER

Currently pending before the Court is Defendant Yahya Farooq Mohammad's ("Defendant") Motion to Set Aside, Vacate and Correct Defendant's Convictions and Sentences pursuant to 28 U.S.C. § 2255 (*See* 3:15-cr-358 ["*Mohammad I*"] ECF No. 389; 3:16-cr-222 ["*Mohammad II*"] ECF No. 70). The United States of America (the "Government") responded (*Mohammad I* ECF No. 390; *Mohammad II* ECF No. 71); Defendant filed a supplemental brief in support of his motion (*Mohammad I* ECF No. 391; *Mohammad II* ECF No. 72); and Defendant replied to the Government's Response (*Mohammad I* ECF No. 392; *Mohammad II* ECF No. 73). For the reasons stated herein, Defendant's Motion (*Mohammad I* ECF No. 389; *Mohammad II* ECF No. 70) is **DENIED**.

I.

Beginning on or about January 1, 2005 and continuing until on or about January 2012, Defendant conspired with others to provide material support and resources, and to conceal and disguise the nature, location, source, and ownership of material support and resources, with the knowledge and intent that such resources were to be used in preparation for an in carrying out: (1) the killing of officers and employees of the United States; (2) the killing of United States' nationals; and (3) acts of terrorism transcending national boundaries. (Plea Agreement ¶ 29 [*Mohammad I* ECF No. 251; *Mohammad II* ECF No. 58]). More specifically, Defendant and his co-conspirators agreed to provide resources to Anwar Al-Awlaki ("Awlaki") for furtherance of "violent jihad" against the United and States and the United States military. (*Id.* ¶ 30). Further, Defendant and his co-conspirators knew that the material support they provided to Awlaki would be used by Awlaki

On September 30, 2015, a federal grand jury returned a four-count Indictment charging Defendant and others with: Conspiracy to Provide and Conceal Material Support to Terrorists, in violation of 18 U.S.C. § 2339A (Count 1); Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A (Count 2); Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (Count 3); and Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512k (Count 4). (*Mohammad I* Indictment [ECF No. 1]). The allegations in the Indictment primarily stemmed from Defendant's efforts to provide money to the terrorist leader Anwar al-Awlaki in 2009. (*See generally id.*). Defendant was arrested in November 2015 and ordered detained pending trial. (*See* Plea Agreement ¶ 36 [*Mohammad I* ECF No. 251; *Mohammad II* ECF No. 58]; *see also Mohammad I* Ord. of Detention [*Mohammad I* ECF No. 18]).

While detained, Defendant solicited another to murder the judge presiding over his case,

Judge Jack Zouhary. (*See* Plea Agreement ¶ 36). Defendant attempted to arrange Judge Zouhary's murder by having a fellow detainee contact a "hit man." (*Id.* ¶¶ 36–37). The "hit man" was actually an FBI undercover employee. (*Id.* ¶ 37). In furtherance of his plot to murder Judge Zouhary, Defendant directed his wife to make a $1,000 down payment to the "hit man." (*See id.* ¶¶ 38–39). Defendant's wife then provided an undercover agent posing as the "hit man" $1,000 on or about May 5, 2016. (*Id.* ¶ 39). On or about May 16, 216, Defendant's wife and the "hit man" met again, and the "hit man" showed her a photograph that purportedly showed the dead body of Judge Zouhary. (*Id.* ¶ 40). After showing Defendant's wife the photograph, the "hit man" demanded the rest of the money from Defendant's wife, who said she had to first get in contact with Defendant. (*Id.*).

Subsequently, on July 6, 2016, a federal grand jury returned a three-count Indictment, charging Defendant with: Attempted First Degree Murder of a Federal Officer or Employee, in violation of 18 U.S.C. § 1114(3) (Count 1); Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373(a) (Count 2); and the Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire, in violation of 18 U.S.C. § 1958(a) (Count 3). (*Mohammad II* Indictment [ECF No. 1]).

On July 10, 2017, Defendant and the Government entered into a binding Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (*See Mohammad I* ECF No. 251; *Mohammad II* ECF No. 58). Pursuant to the Plea Agreement, Defendant agreed to plead guilty to: Count One in case number. 3:15-cr-358, Conspiracy to Provide and Conceal Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; and Count Two in case number. 3:16-cr-222, Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373(a). (*See* Plea Agreement ¶¶ 2, 18). Defendant agreed to waive certain rights, including his right to appeal his

convictions, his right to appeal the sentence imposed, and his right to collaterally attack his conviction, by way of motion brought pursuant 28 U.S.C. § 2255. (*See id.* ¶ 26).[1] A change of plea hearing took place before the undersigned on July 10, 2017. (*See Mohammad I* ECF No. 252; *Mohammad II* ECF No. 59). During this hearing, the undersigned questioned Defendant about the Plea Agreement that he entered into with the Government. (*See generally* Change of Plea Tr. [*Mohammad I* ECF No. 257]). More specifically, the Court had the Government outline the facts that supported Defendant's offenses of conviction.

As to Count One of case number 3:15-cr-358, the Government presented that the following facts supported the finding that Defendant conspired to provide and conceal material support or resources to terrorists, in violation of 18 U.S.C. § 2339A:

> [A]t least as early as on or about January 1, 2005, and continuing until in or around January 2012, in the Northern District of Ohio and elsewhere, the defendant, Yahya Farooq Mohammad, admits that he did knowingly and intentionally combine, conspire and agree with Ibrahim Zubair Mohammad, Asif Ahmed Salim, Sultane Roome Salim, and with others known and unknown, to provide material support and resources and to conceal and disguise the nature, location, source and ownership of material support and resources, to wit, property and services,

---

[1] Defendant's appellate waiver is as follows:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. Defendant expressly and voluntarily waives those rights, except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; or (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

(Plea Agreement ¶ 26).

4

including currency and monetary instruments, tangible property, services and expert advice and assistance, knowing and intending that they were to be used in preparation for and in carrying out violations of Title 18, United States Code, Sections 1114, which is killing of officers and employees of the United States; 2332, which is killing of U.S. nationals; and 2332b, acts of terrorism transcending national boundaries.

Specifically, as part of the conspiracy, Mohammad and his coconspirators . . . agreed to provide funds, equipment and expert advice and assistance to Anwar Al-Awlaki to be used in furtherance of "violent jihad" against the United States and the United States military in Iraq, Afghanistan and throughout the world.

Mohammad and his coconspirators . . . knew and intended that the funds, equipment and expert advice they conspired to provide to Awlaki would be used by Awlaki in preparation for and in carrying out acts of terrorism, including offenses which would constitute violations of Title 18, United States Code, Sections 1114, the killing of officers and employees of the United States; 2332, the killing of U.S. nationals; and 2332b, acts of terrorism transcending national boundaries.

As part of the conspiracy, starting in approximately January 2009, Mohammad collected, solicited and raised funds both in the United States and elsewhere to provide Awlaki and planned to travel to Yemen in late January 2009 with coconspirators to deliver funds to Awlaki.

In order to raise funds for Awlaki in his planned travel to Yemen, Mohammad conspired with Ibrahim Mohammad to conduct bank fraud using multiple credit cards issued by multiple financial institutions.

Because Mohammad was sick, he did not travel to Yemen in late January 2009, but two coconspirators did and delivered the funds raised by Mohammad to an associate of Awlaki's.

The amount of funds raised by Mohammad and his coconspirators and delivered to Awlaki in late January 2009 was approximately $7000.

In the spring of 2009, Mohmmad agreed, again with his coconspirators . . . to raise funds for Awlaki and to travel to Yemen to deliver the funds to Awlaki.

In order to raise funds in the United States, Mohammad collected approximately $17,000 from Asif Salim and Sultane Salim for delivery to Awlaki. These funds were provided in the form of one check from Asif Salim in the amount of $2000 and three checks from Sultane Salim totaling $15,000.

The checks were provided to Ibrahim Mohammad, who was then living in the

> Northern District of Ohio, who them deposited them into Mohammad's U.S. based bank account.
>
> In order to transfer the money to Mohammad in the United Arab Emirates, Mohammad and Ibrahim Mohammad made payments for tuition and other expenses for a relative in the Northern District of Ohio. The relative's father then repaid the value of the expenses directly to Mohammad in the United Arab Emirates.
>
> On or about July 23, 2009, Mohammad traveled to Yemen with two coconspirators to deliver funds to Awlaki. In Yemen[,] Mohammad and his coconspirators provided the funds to an associate of the [sic] Awlaki's after they were unable to meet Awlaki. The amount of fund provided to Awlaki through his associate was approximately $22,000.
>
> On or about October 5, 2009, Mohammad received an e-mail from Awlaki acknowledging the receipt of the funds which Mohammad shared with other coconspirators.
>
> In addition to providing material support to Awlaki, Mohammad and his coconspirators also conspired to conceal the provision of material support and obstruct the investigation into their activities. To further these goals, Mohammad instructed Ibrahim Mohammad to lie to law enforcement about the funds provided to Awlaki, lied himself to investigators, and deleted relevant e-mails.

(Change of Plea Tr. at 25:21–29:2). The Court then asked Defendant whether the Government's rendition of the facts was correct, to which Defendant answered: "Yes, Judge[;]" and Defendant submitted that no part of the Government's statement was incorrect. (*Id.* at 29:4–11).

The Government then outlined the facts that gave rise to Count Two in case number 3:16-cr-222, Solicitation to Commit a Crime of violence, in violation of 18 U.S.C. § 373:

> Beginning in or around March of 2016 and continuing until on or about May 16, 2016, in the Northern District of Ohio, Western Division and elsewhere, the defendant, Yahya Farooq Mohammad, admits he solicited, commanded induced and otherwise endeavored to persuade another person to kill United States District Court Judge Jack Zouhary, a federal felony that has an element the use, attempted use or threatened use of physical force against a person on account of the judge's performance of his official duties under circumstances that strongly corroborate his intent.
>
> While pending trial in Case Number 3:15-CR-358, Mohammad was detained in the Lucas County Corrections Center in Toledo, Ohio, in the Northern District of Ohio.

6

United States District Court Judge Jack Zouhary was the presiding judge assigned to the case.

While detained, Mohammad met another inmate, Individual A, in the Lucas County Corrections Center and acknowledged to Individual A that he wanted to hire someone to kill Judge Zouhary. Mohammad agreed to pay $15,000 for the murder of Judge Zouhary.

Individual A provided Mohammad with the name and telephone number of an FBI undercover employee, hereinafter referred to as UCE, who was posing as an associate of Individual A who was capable of implementing the plan to kill Judge Zouhary.

In order to disguise their conversations, Mohammad and Individual A worked out a code to be used when Mohammad communicated with the UCE about the murder of Judge Zouhary.

Individual A also told Mohammad that the "hitman" would need a down payment.

On or about April 26, 2016, Mohammad called the UCE from the Lucas County Corrections Center. Using the code that Mohammad had previously worked out with Individual A, Mohammad told the UCE that he wanted to have Judge Zouhary killed. The UCE requested a $1000 down payment.

On or about May 5 of 2016, Mohammad's wife met with the UCE and provided the UCE with $1000 in United States currency at Mohammad's direction. The money was intended by Mohammad as a down payment for the murder of Judge Zouhary, and Mohammad actually intended that the UCE kill Judge Zouhary.

On or about May 16, 2016, the UCE met with Mohammad's wife at the previously arranged location. The UCE showed her a photograph that purported to who the dead body of Judge Zouhary. The UCE state that the photograph was the matter that the UCE was to conduct for her husband. The UCE demanded the rest of the money owed for the murder of Judge Zouhary.

Mohammad's wife told the UCE that she would contact her husband and then she would contact the UCE.

Mohammad admits that by causing the UCE to be paid $1000, that is sufficient corroborative evidence of his intent to have someone kill the judge.

Further, he admits that Judge Zouhary was an official or employee of the United States, and that he solicited the murder of Judge Zouhary on account of the performance of his official duties.

The defendant acknowledges that the above-summary of the defendant's conduct

does not set forth each and every fact that the United States Attorney's office could
have proven at trial, nor does it encompass all of the acts the defendant committed
in furtherance of the offense to which the defendant is pleading guilty.

(Change of Plea Tr. at 29:21–32:6). The Court asked Defendant whether the Government's recitation of the facts pertaining to Count Two in case number 3:16-cr-222 were correct. (*Id.* at 32:8–11). The Defendant stated they were. (*Id.* at 32:12). The Court then asked whether "any part of the state [was] incorrect?" (*Id.* at 32:13). Defendant answered: "No." (*Id.* at 32: 14).

The Court also questioned Defendant about the Plea Agreement's appellate waiver.

> THE COURT: And with regard to paragraph 26 on page 10, do you also understand that you are giving up most of your right to appeal anything in this case?
>
> THE DEFENDANT: Yes, Judge.
>
> THE COURT: There are some exceptions. One would be if I imposed a sentence in excess of the statutory maximum or if I exceeded the sentencing guideline range, or if you were the victim of ineffective assistance of counsel or of prosecutorial misconduct. Those are preserved, but do you understand all other issues you might otherwise have a right to raise on appeal will be waived by this plea agreement?
>
> THE DEFENDANT: Yes, I understand that.

(Change of Plea Tr. 24:8–19). At the end of the hearing, the Court asked Defendant whether: "In light of all my questions, is it still your intention to plead guilty to both of those counts?" (*Id.* at 32:18–19). Defendant answered affirmatively. (*Id.* at 32:20). And the Court stated:

> I have observed the appearance and the responsiveness of the defendant in giving his answers to my questions.
>
> Based upon my observations of him and answers given, I am satisfied that he is in full possession of his faculties and is not suffering from any apparent physical or mental illness. He is not under the influence of narcotics or alcohol, and he understands these proceedings. He understands the nature and the meaning of the charges and all of the attendant consequences of the offered pleas of guilty. He is aware of the terms and conditions of the plea agreement.

(*Id.* at 32:21–33:6). The Court then accepted Defendant's offered pleas of guilty. (*Id.* at 33:8–9,

17–19).

On November 6, 2017, Defendant appeared before the undersigned for sentencing. And, at that time, the Court accepted the Plea Agreement and sentenced Defendant accordingly. (*See* Nov. 6, 2017 Mins. [*Mohammad I* ECF No. 281; *Mohammad II* ECF No. 65]; *see also* Judgment [*Mohammad I* ECF No. 284; *Mohammad II* ECF No. 68]). Pursuant to the parties' binding Plea Agreement, the Court sentenced Defendant to 180 months of imprisonment on Count 1 in case number 3:15-cr-358 and to 240 months of imprisonment on Count 2 in case number 3:16-cr-222. (Judgment at 2). Further, as per the Plea Agreement, the Court ordered that 90 months of the sentence on Count 2 in *Mohammad II* were to run concurrently with the sentence in *Mohammad I*, and that the remaining 150 months were to run consecutively. (*Id.*). Thus, the Court sentenced Defendant to a term of imprisonment for a total of 330 months. (*Id.*). The Court entered Judgment on November 8, 2017. (*See id.*).

Defendant is now moving the Court to set aside, vacate, and correct his convictions and sentences as Defendant now avers that his offenses of conviction are now unconstitutional. (*See generally* 2255 Mot. [*Mohammad I* ECF No. 389; *Mohammad II* ECF No. 70]).[2] Defendant asserts that recent Supreme Court precedent invalidates his offenses of conviction as they are unconstitutionally vague. (2255 Mot. at 9, 10). Defendant avers:

> The vagueness—unconstitutional feature in the doctrine of conspiracy, as in § 16(b) produces more "unpredictability and arbitrariness than the Due Process Clause cant tolerate[.]" Dimaya Id. Consequently, these conspiracy and solicitation offenses cannot be legitimately interpreted under § 924(c)(3)(B) as a "crime of violence", or analogously under any statute with hallmarks of vagueness, and lack of predictability that the [C]onstitution demands. Defendant's convictions must be set aside and his fundamental constitutional rights vehemently protected.

---

[2] Defendant asserts that, "under a *Johnson-Dimaya* analysis [his offenses of conviction] can never be interpreted as crimes of violence." (2255 Mot. at 9).

9

(*Id.* at 10). The Government submits that the Court should deny Defendant's Motion because: 1) Defendant's motion is untimely; 2) Defendant waived his right to collaterally attack his conviction or the sentence imposed; and 3) Defendant's Motion is without merit. (*See generally* Gov't Opp'n [*Mohammad I* ECF No. 390; *Mohammad II* ECF No. 71]).

## II. Statute of Limitations

### A. 28 U.S.C. § 2255(f)

Title 28 of the United States Code, Section 2255 sets forth the following statute of limitations for a motion to vacate:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest
>
> (1) the date on which the judgment of the conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "Generally, a conviction becomes final upon conclusion of direct review." *Johnson v. United States*, 457 F. App'x 462, 464 (6th Cir. 2012) (citing *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). If the defendant pursues a direct appeal, the judgment becomes final upon the expiration of the 90-day period in which the defendant could have petitioned for *certiorari* to the Supreme Court of the United States, even if the defendant does not file such a petition. *Id.* (citing *Sanchez-Castellano*, 358 F3d at 426–27). If the defendant does not file a direct appeal, "the judgment becomes final upon the expiration of the period in which

the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Id.* (quoting *Sanchez-Castellano*, 358 F.3d at 427).

**B.     Analysis**

As described above, Defendant had 14-days to appeal his November 8, 2017 conviction. *See* Fed. App. R. 4(b)(1)(A). Defendant did not file a direct appeal of his conviction or the sentence imposed with the Sixth Circuit Court of Appeals. Because Defendant did not file such an appeal, his conviction became final on November 22, 2017, when that 14-day period to file an appeal expired. Under 28 U.S.C. § 2255(f)(1), the statute of limitations began to run the following day and expired one year later on November 23, 2018. Defendant filed the present motion on March 20, 2019, approximately 16-months after the statute of limitations began to run, and approximately 4-months after the statute of limitations had tolled. (*See* ECF No. 70-1).[3] Accordingly, Defendant's Motion to Vacate is untimely.

Defendant submits that the United States Supreme Court's decision in *Sessions v. Dimaya*, __ U.S. __, 138 S. Ct. 1204, 200 L.E.2d 549 (2018), recognized a new right and made such right retroactively applicable to cases on collateral review, making his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3). (*See* Def. Mot. at 5; *see also* Def. Reply at 4–5). However, Defendant's reliance on *Dimaya* is misplaced.

*Dimaya* addressed the residual clause defining "crime of violence" for purposes of the INA, codified in 18 U.S.C. § 16. Section 16's residual clause defined a crime of violence as: "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.

---

[3] Defendant's mailing is postmarked March 20, 2019; the Court follows the "mailbox rule" when determining the date § 2255 Motion is filed. *See Town v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).

11

§ 16(b). Without addressing the language of § 16(a), the *Dimaya* plurality found that § 16(b) to be unconstitutionally vague for the same reasons the Court previously found ACCA's residual clause failed to comply with Due Process in *Johnson v. United States*, 576 U.S. __, 138 S. Ct. 2551, 192 L.Ed.2d 569 (2015). In *Johnson*, the Supreme Court found that including in the definition of "violent felony" crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another[,]" does not comport with constitutional due process requirements as it "denies fair notice to defendants and invites arbitrary enforcement by judges." 138 S. Ct. at 2557.[4] The *Dimaya* plurality stated:

> *Johnson* tells us how to resolve this case. That decision held that "[t]wo features of [ACCA's] residual clause conspire[d] to make it constitutionally vague." 576 U.S., at__, 135 S.Ct., at 2557. Because the clause had both an ordinary-case requirement and an ill-defined risk threshold, it necessarily "devolve[d] into guesswork and intuition," invited arbitrary enforcement, and failed to provide fair notice. *Id.*, at __, 135 S.Ct., at 2559. Section 16(b) possesses the exact same two features and none of the minor linguistic disparities in the statue makes any real difference. So just like ACCA's residual clause, § 16(b) "produces more unpredictability and arbitrariness than the Due Process clause tolerates." *Id.*, at __, 135 S.Ct., at 2559.

Defendant submits: "Dimaya makes clear that its holding is not restricted but instead applies to invalidate any provision (emphasis added) that possesses 'an ordinary case requirement and an ill-defined risk threshold.'" (2255 Mot. at 4) (quoting *Dimaya*, 138 S. Ct. at 1223). And further avers that his "convictions and sentences were contingent and intricly [sic] related to the erroneous weight given to the offense conduct being classified as crimes—felonies involving extreme propensities for violence." (*Id.* at 7). Further, it is Defendant's position that "[t]he case sub-judice was wholly contingent upon these unconstitutional premises and § 16's residual

---

[4] *See also Johnson*, 135 S. Ct. at 2563 ("imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.").

12

clause." (*Id.* at 4).[5]

*Dimaya* is inapplicable to the case at bar. As the Government correctly points out, "[t]he Dimaya decision addressed only the definition at Section 16(b). It did not invalidate or even address, the definition of crime of violence at Section 16(a), which is commonly known as the 'elements' or 'force' clause." (Gov't Opp'n at 7). And neither of Defendant's offenses of conviction "relies on or uses a definition of crime of violence similar to that contained at Section 16(b)." (*Id.* at 8).

*Dimaya* is irrelevant to the present case as neither of Defendant's offenses of conviction incorporated a residual clause. Defendant was convicted of two offenses: 1) Conspiracy to Provide and Conceal Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; and 2) Solicitation to Commit a Crime of Violence, to wit murder of a federal official, in violation of 18 U.S.C. § 373; *see also* 18 U.S.C. § 1114. The elements the Government needed to prove to support a find that Defendant violated § 2339A are:

1.) The defendant conspired or agreed with at least one other individual to provide material support or resources, and to conceal and disguise the nature, location, source, ownership of material support or resource;

2.) The defendant had knowledge or intent that such support or resources would be used in preparation for or carrying out a violation of 18 U.S.C. §§ 1114, 2332, or 2332b; and

3.) The defendant knowingly and voluntarily joined the conspiracy.

---

[5] Defendant implies that the Supreme Court has also found § 924(c) to be unconstitutionally vague. (*See* 2255 Mot. at 6 ["The Supreme Court determined that both § 924(c) and § 16 'suffer[] from the same (emphasis added) constitutional defect as identified in Johnson.' Dimaya, 138 S. Ct. at 1210."]). However, the issue of whether § 924(c) comports with constitutional due process requirements is currently pending before the Supreme Court. *See United States v. Davis*, 139 S. Ct. 782 (Jan. 4, 2019) (granting Petitioner's Petition for writ of *certiorari*.).

13

*See* 18 U.S.C. § 2339A; (*see also* Change of Plea Tr. at 13:6–23; Plea Agreement ¶ 18). *Dimaya* has no relevance to Defendant's first offense as a conviction under § 2339A does not rely on, nor does the statute[6] even reference, any definition of crime of violence, let alone a residual clause such as the one invalidated by *Dimaya*.

And to prove that Defendant violated § 373 of the federal criminal code, the Government needed to establish:

1.) Defendant intentionally solicited, commanded, induced, or otherwise endeavored to persuade another individual to engage in conduct;

2.) That conduct constituted a federal felony that had as an element the use, attempted use, or threatened use of physical force against property or against another individual, specifically the murder of a government official; and

3.) The circumstances strongly corroborate the intent.

*See* 18 U.S.C. §§ 373(a), 1114; (*see also* Change of Plea Tr. at 14:1–12; Plea Agreement ¶ 18). While a conviction under § 373 necessitates proof that the defendant solicited another to engage in conduct that constitutes a violent felony, § 373 does not contain a residual clause similar to those found to be unconstitutional in *Dimaya* and *Johnson*. Rather, § 373's requirement that a defendant solicit another to "engage in conduct constituting a felony that has an element the use,

---

[6] The relevant portion of 18 U.S.C. § 2339A prohibits individuals from:

> provid[ing] material support or resources or conceal[ing] or disguise[ing] the nature, location, source, or ownership of material support or resources, knowing or intending that they are used in preparation for, or in carrying out a violation of section . . . 1114, . . . 2332, [or] . . . 2332b. . . or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to such an act.

18 U.S.C. § 2339A(a).

14

attempted use, or threatened use of physical force against property of the person of another[,]" is more analogous to § 16(a),[7] which the *Dimaya* plurality did not address.[8] As such, the plurality's decision in *Dimaya* does not call into question the constitutionality of either of Defendant's offenses of convictions.[9,10]

Accordingly, the Court finds that *Dimaya* does not recognize a new right retroactively applicable to the case at bar. As such, the statute of limitations to file a motion to set aside, vacate, and correct Defendant's convictions and sentences tolled on November 23, 2018. *See* 28 U.S.C. § 2255(f)(1). Defendant filed the present motion on March 20, 2019, approximately four months after the statute of limitations had past.

Because Defendant's Motion to Vacate is untimely, the Court need not further address the

---

[7] Section § 16(a) defines a "crime of violence" to be: "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

[8] Additionally, the pertinent language of § 373 is also comparable to ACCA's "elements clause." *Compare* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" to include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]") *with* 18 U.S.C. § 373(a). In *Johnson*, the Court specifically noted that its finding that ACCA's residual clause violated due process did "not call into question application of the Act to the four enumerated offense, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563.

[9] Defendant draws the Court's attention to three related cases from the Eastern District of Virginia, in which the District Court Judge "reversed convictions of accused terrorism charges related to various conspiratorial activities alleging acts to kill, maim, and commit egregious violence." (2255 Mot. at 11) (citing *Chapman v. United States*, 326 F. Supp. 3d 228 (E.D. Va. 2018); *Khan v. United States, Khan v. United States*, 330 F. Supp. 3d 1076 (E.D. Va. 2018); *Royer v. United States*, 324 F. Supp. 3d 719 (E.D. Va. 2018)). However, these cases are distinguishable from the case at bar as the District Court found that *Dimaya* invalidated the Defendants' convictions under §§ 924(c) and 924(o) and the Defendant in this case has not been convicted of either of those offenses. *See Chapman*, 326 F. Supp. 3d at 232–33; *Khan*, 330 F. Supp. 3d at 1098; *Royer*, 324 F. Supp. 3d at 744.

[10] In his supplemental briefing, Defendant directs the Court to *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019). (Supp. Br. at 1 [*Mohammad I* ECF No. 391; *Mohammad II* ECF No. 72]). However, *Simms* is distinguishable for the same reason the cases *supra*, n. 9, are irrelevant to the case at bar. *Simms* found that, after *Dimaya*, § 924(c)'s residual clause is unconstitutionally vague. *Simms*, 914 F3d at 234.

merits of Defendant's arguments; nor expound upon whether Defendant waived his right to file the present motion in his Plea Agreement.

### III. Evidentiary Hearing

Defendant requests an evidentiary hearing. (2255 Mot. at 1). However, an evidentiary hearing is not required in a § 2255 proceeding if the record conclusively establishes that a petitioner is not entitled to relief. 28 U.S.C. § 2255(b). Here, no hearing is required because the § 2255 Motion and the records of the case conclusively show that Defendant's claims are time-barred. *See Berry v. United States*, 1:08-cr-516, 2017 WL 4286671, at *3 (N.D. Ohio Sept. 27, 2017) (citing *United States v. Morales-Dorantes*, No. 1:07-cr-295, 2014 WL 1338159, at *3 (W.D. Mich. Apr. 2, 2014)). (holding that no hearing necessary where the files and the records conclusively showed that motion was time-barred and movant was thus not entitled to relief under § 2255)). As such, Defendant's request for an evidentiary hearing is **DENIED**.

### IV. Appointment of Counsel

Incorporated in his § 2255 Motion, Defendant has also moved the Court for the appointment of counsel. (§ 2255 Mot. at 1). The United States Supreme Court has held that a prisoner's post-conviction right to counsel extends only to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions and we decline to so hold today."). *Habeas* proceedings are considered to be civil in nature, and a movant has no constitutional right to counsel in *habeas corpus* proceedings. *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991)); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Rather, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided

16

for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2)(B). "The decision to appoint counsel for a federal habeas Movant is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (citations omitted).

The appointment of counsel is mandatory only where the record indicates that an evidentiary hearing is required to resolve the movant's claims. *See* Rule 8(c) of the Rules Governing Section 2255 Cases in the United States District Courts. In assessing whether to exercise its discretion in appointing counsel, the Court should consider "the legal and factual complexity of the case, the Movant's ability to investigate and present his claims, and any other relevant factors." *Matthews v. Jones*, No. 5:13-cv-1850, 2015 WL 545752, at *3 (N.D. Ohio Jan. 22, 2015) (citations omitted). "Where the issues involved can be properly resolved on the basis of the . . . record, a district court does not abuse its discretion in denying a request for court-appointed counsel." *Poulton v. Warden, Ross Corr. Inst.*, No. 2:15-cv-2352, 2018 WL 527286, at *6 (S.D. Ohio Jan. 24, 2018) (citations omitted).

Here, as discussed *supra*, no evidentiary hearing will be required to resolve Defendant's claims. Moreover, the record does not reflect that the case is so unduly complex that the interests of justice or due process require the appointment of counsel to assist the Defendant. Further, the record reflects that to date, Defendant has adequately presented his argument on his own behalf. Accordingly, the request for the appointment of counsel is **DENIED**.

### V. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court must consider whether to issue a Certificate of Appealability ("COA"). 28 U.S.C. § 2255(c)(1)(B). When a claim has been denied on the merits, a COA may be issued

only if the movant "has made a substantial showing of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When a claim has been denied on procedural grounds, a COA may be issued if the movant establishes that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

The Court is not persuaded that reasonable jurists would debate that this Court's analysis of the applicability of *Dimaya* to the present case nor would reasonable jurists debate the Court's dismissal of this action. Therefore, the Court **DECLINES** to issue a certificate of appealability.

**VI.**

For the reasons stated herein, Defendant Yahya Farooq Mohammad's Motion to Set Aside, Vacate and Correct Defendant's Convictions and Sentences pursuant to 28 U.S.C. § 2255 (*Mohammad I* ECF No. 389; *Mohammad II* ECF No. 70) is **DENIED** and this action is hereby **DISMISSED**. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

6-27-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE
Southern District of Ohio